IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| GROUPCHATTER, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ITRON, INC.,<br><br>        Defendant. | **CASE NO.  6:15cv-00900**<br><br>**JURY TRIAL DEMANDED** |

**ITRON, INC.'S MOTION TO TRANSFER TO THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA PURSUANT TO 28 U.S.C. § 1404(a)**

Table of Contents

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS .................................................................................................. 2

    A. The Itron Defendant ................................................................................................ 2

    B. Plaintiff GroupChatter .............................................................................................. 3

    C. Relevant Non-Party Witnesses ................................................................................ 4

III. ARGUMENT AND AUTHORITIES ................................................................................... 5

    A. This Action Could Have Been Brought in the Northern District of Georgia. ........................................................................................................................ 6

    B. The Private Interest Factors Favor Transfer. .......................................................... 7

        1. Relative Ease of Access to Sources of Proof ............................................. 7

        2. Availability of Compulsory Process to Secure Attendance of Witnesses ................................................................................................... 8

        3. Cost of Attendance for Willing Witnesses ................................................. 9

        4. Any Other Practical Problems ................................................................. 11

    C. The Public Interest Factors Collectively Favor Transfer. ..................................... 11

        1. Administrative Difficulties Flowing From Court Congestion ................. 11

        2. The Local Interest in Having Localized Interests Decided at Home ....... 12

        3. Familiarity with the Law that will Govern Case ...................................... 14

        4. Avoidance of Conflicts of Laws ............................................................... 14

IV. CONCLUSION ................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adaptix, Inc. v. HTC Corp.*
   937 F. Supp. 2d 867 (E.D. Tex. 2013)..........................................................................7, 10, 13

*Balthasar Online, Inc. v. Network Sols., LLC*
   654 F. Supp. 2d 546 (E.D. Tex. 2009) ......................................................................................5

*Fujitsu Ltd. v. Tellabs, Inc.*
   639 F. Supp. 2d 761 (E.D. Tex. 2009).......................................................................................7

*Hoffman v. Blaski*
   80 S. Ct. 1084 (1960) ................................................................................................................6

*In re Genentech*
   566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................7, 9

*In re Hoffman-La Roche*
   587 F.3d 1333 (Fed. Cir. 2009)...................................................................................8, 12, 13

*In re Nintendo Co.*
   589 F.3d 1194 (Fed. Cir. 2009).............................................................................................6, 14

*In re TS Tech USA Corp.*
   551 F.3d 1315 (Fed. Cir. 2009)..............................................................................................5, 13

*In re Volkswagen AG*
   371 F.3d 201 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").....................................................6

*In re Volkswagen of Am., Inc.*
   545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ................................................................5, 13

*Optimum Power Sols. LLC v. Apple, Inc.*
   794 F. Supp. 2d 696 (E.D. Tex. 2011).......................................................................................9

*Voxpath v. LG Elecs. U.S.A., Inc.*
   No. 2:210-cv-160, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012) .......................................11, 12

*Wireless Recognition Techs. LLC v. A9.com*
   No. 2:10-cv-364, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012)............................10, 12, 13, 14

*Zenith Elecs. LLC v. Sony Corp.*
   No. 11-cv-02439, 2011 U.S. Dist. LEXIS 102242 (E.D. Tex. Apr. 25, 2011.) ....................11

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**STATUTES**

28 U.S.C. § 1391(c) ...................................................................................................6

28 U.S.C. § 1391(d) ...................................................................................................6

28 U.S.C. § 1400(b) ...................................................................................................6

28 U.S.C. § 1404(a) ...................................................................................1, 2, 5, 10

I.      INTRODUCTION

Defendant Itron, Inc. respectfully moves the Court to transfer this patent case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a).  The facts presented here are identical to, or nearly identical to, the facts this Court already has concluded weigh in favor of transfer in its recent Order granting Landis & Gyr's Motion to Transfer to the Northern District of Georgia.  The same result is warranted here because no factor weighs against transfer and several factors weigh in favor of transfer or are neutral, as depicted in the following chart:

| The 1404(a) Factors | Relationship between Itron's evidence and Landis & Gyr's evidence | This Court's Finding in Order granting Landis & Gyr's Motion to Transfer |
| --- | --- | --- |
| Relative Ease of Access to Sources of Proof | **Very Similar Evidence** | **"weighs strongly in favor of transfer"** |
| Availability of compulsory process to secure the attendance of witnesses | **Identical Evidence** | **"weighs in favor of transfer"** |
| Cost of attendance for willing witnesses | **Very Similar Evidence** | **"weighs in favor of transfer"** |
| Judicial Economy | Nearly Identical Evidence | "this factor is neutral" |
| Administrative difficulties from court congestion | Identical Evidence | "Court finds this factor neutral" |
| Local Interest | **Very Similar Evidence** | **"weighs in favor of transfer"** |
| Familiarity with the law | Identical Evidence | "remaining public interest factors are neutral" |
| Avoidance of conflicts of laws | Identical Evidence | "remaining public interest factors are neutral" |

First, several significant non-party witnesses are located in and within the subpoena power of the Northern District of Georgia, including the two named inventors of the patents-in-suit, the former owner of the patents-in-suit, and the brokerage firm that appears to have sold the patents-in-suit to Plaintiff GroupChatter, LLC.  Second, the accused Itron OpenWay system was designed and developed at Itron's facilities in South Carolina where numerous likely Itron witnesses reside and much closer to the Northern District of Georgia (about 65 - 120 miles depending on the division) than the Eastern District of Texas (almost 800 miles).

By comparison, this case has little, if any, meaningful connection to the Eastern District. Although GroupChatter claims to have a principal place of business in this District, the facts suggest that its office here was likely established for venue reasons. GroupChatter was formed in September 2014 under the name Monument Tech Eta, LLC, changed its name to GroupChatter in July 2015, acquired the patents-in-suit in July 2015, and filed its first of a series of suits in September 2015. Public records suggest that GroupChatter shares its Plano, Texas business address with at least thirteen (13) other entities, including its sole member, Monument Patent Holdings. Several of these entities even share the same corporate formation dates. Given GroupChatter's relatively recent formation and its recent acquisition of the patents-in-suit, it is unlikely that a significant amount of relevant evidence resides in the Eastern District of Texas.

Because the Northern District of Georgia is a clearly more convenient venue, Itron respectfully requests that the Court transfer this case to the Northern District of Georgia.

## II.     STATEMENT OF FACTS

### A.     The Itron Defendant

Itron is a world-leading technology and services company dedicated to the resourceful use of energy and water with a broad product portfolio that includes electricity, gas, water and thermal energy measurement devices and control technology. (*See* Declaration of Simon Pontin "Pontin Decl.") ¶ 2). GroupChatter contends that Itron's OpenWay system infringes the patents-in-suit. (*See id.* ¶¶ 14, 29, 42, 52; Dkt. No. 1 at Counts 1-4). The accused OpenWay system includes meter data collection, network operations, asset monitoring and control capabilities that provide a broad suite of smart grid applications to utilities, energy service providers and customers. (*See* Pontin Decl. ¶ 2).

Defendant Itron is a Washington corporation with its headquarters and principal place of business in Liberty Lake, Washington. (*See* Pontin Decl. ¶ 3). However, the largest

concentration of Itron witnesses knowledgeable about the accused OpenWay system are located in close proximity to the Northern District of Georgia at Itron's facilities in Oconee County, South Carolina.  (*See id.* ¶¶ 4-5).  No such witnesses are located in the Eastern District of Texas.  (*See id.* ¶¶ 3-5).  Numerous Itron employees located in Oconee are responsible for, and have knowledge about, the research, design, development, testing and manufacturing of the relevant OpenWay products.  (*See id.* ¶¶ 4-5).  Employees responsible for managing this development work also are located in Oconee, and include Itron's Chief Technology Officer and its Vice President of Research and Development.  (*See id.* ¶¶ 4-5).  Itron anticipates these witnesses will have information relevant to at least the issues of non-infringement and damages, (if applicable).  In addition, documents pertaining to the research, design, development of the accused OpenWay system (including firmware) also are maintained in Oconee. (*See id.* ¶ 8).  Itron anticipates that these documents and data are likely relevant to at least the issues of non-infringement and damages (if applicable).

Itron sells the accused OpenWay system nationwide, including to customers located in the Northern District of Georgia.  (*See id.* ¶¶ 9-10).  Itron also has relationships with customers, distributors and other partners located in the Northern District of Georgia.  (*Id*. ¶ 10).

### B. Plaintiff GroupChatter

GroupChatter is a Texas limited liability company formed on or about September 26, 2014 under the name "Monument Tech Eta, LLC."  (*See* Decl. of John M. Guaragna ("Guaragna Decl.") ¶ 2, Ex. A).  According to its corporate documents, Monument Tech Eta changed its name to GroupChatter on or about July 8, 2015.  (*See* Guaragna Decl. ¶ 3, Ex. B).  GroupChatter's filings indicate that it does not have any managers; it is governed by Monument Patent Holdings, LLC, another Texas limited liability company.  (*See* Guaragna Decl. ¶ 2.)

Monument Patent Holdings was formed on or about December 13, 2013. (*See* Guaragna Decl. ¶ 4, Ex. C). Monument Patent Holdings' corporate filings indicate that it does not have any managers. (*See* Guaragna Decl. ¶ 4, Ex. C). Instead, it is governed by three members, two of whom list addresses in Dallas, Texas (outside this District), and one of whom (Matthew DelGiorno) lists an address at 906 Granger Drive, Allen, Texas (within this District). (*See* Guaragna Decl. ¶ 4, Ex. C). The Allen, Texas address appears to be associated with at least nineteen (19) other entities, including Mr. DelGiorno's law firm, DelGiorno IP Law, PLLC. (*See* Guaragna Decl. ¶ 5, Ex. D).

GroupChatter contends its headquarters and principal place of business are located at 1400 Preston Road, Suite 475, Plano, Texas 75093. (Dkt. No. 1 ¶ 1). GroupChatter appears to share this address with at least thirteen (13) other entities, including Monument Patent Holdings. (*See* Guaragna Decl. ¶ 6, Ex. E). Notably, several of these entities share the same corporate formation dates as other entities at this address. (*See* Guaragna Decl. ¶ 6, Ex. E (showing multiple entities incorporated on 9/26/2014, 5/13/2014, and 3/5/2014)).

### C. Relevant Non-Party Witnesses

Numerous relevant non-party witnesses are located in, and within the subpoena power of, the Northern District of Georgia. For example, the two named inventors of the patents-in-suit, James M. Dabbs, III and Brian Claise, still work for the previous patent owner, Critical Response Systems, Inc., as the President and Vice President, respectively. (*See* Dkt. No. 1 Exs. A-D; Guaragna Decl. ¶ 7, Ex. F). Critical Response Systems is located in the Northern District of Georgia (Norcross, Georgia).[1] (*See* Guaragna Decl. ¶ 8, Ex. G). On information and belief, these

---

[1] The 30092 zip code is associated with Norcross, Georgia, which is in Gwinnett, County and located in the Northern District of Georgia. *See* http://georgia.gov/cities-counties/norcross; http://www.gand.uscourts.gov/content/atlanta.

non-parties likely have firsthand knowledge and documents pertaining to the conception, reduction to practice, and ownership of the patented technologies, prior art to the patents-in-suit, and the prosecution, valuation, and sale of the patents-in-suit.

Another relevant non-party, IPinvestments Group, is located in the Northern District of Georgia (Norcross, Georgia).  (*See* Guaragna Decl. ¶ 9, Ex. H).  IPinvestments represented Critical Response Systems in connection with its sale of the patents-in-suit.  (*See* Guaragna Decl. ¶ 9, Ex. H). On information and belief, IPinvestments likely has firsthand knowledge and documents pertaining to the sale of and any valuation performed on the patents-in-suit.

The patent attorney primarily involved in the prosecution of the patents-in-suit is currently located in Washington, D.C.  (*See* Guaragna Decl. ¶ 10, Ex. I).  While this attorney is not located within the subpoena power of the Northern District of Georgia or the Eastern District of Texas, she is located closer to the Northern District of Georgia than the Eastern District of Texas.  (*See* Guaragna Decl. ¶ 11, Ex. J).  It would be faster and more convenient for this witness to fly from Washington, D.C. to the Northern District of Georgia, than to fly to Dallas-Fort Worth airport and rent a car to drive to Tyler, Texas.  (*See* Guaragna Decl. ¶ 11, Ex. J).

### III.    ARGUMENT AND AUTHORITIES

28 U.S.C. § 1404(a) provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought...."  Under Fifth Circuit law, a motion to transfer venue should be granted upon a showing that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009).

The threshold question for transfer is whether the action could have been brought in the proposed transferee district.  *See Balthasar Online, Inc. v. Network Sols., LLC*, 654 F. Supp. 2d

546, 549 (E.D. Tex. 2009) (citing *Hoffman v. Blaski*, 80 S. Ct. 1084 (1960)).  If the transferee district is proper, courts weigh "private" and "public" interest factors to assess the convenience of parties and witnesses, and each venue's interest in hearing the case.  *See In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) ("*Volkswagen I*").  The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See id.*  The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws in the application of foreign law.  *See id.*  "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

      **A.**      **This Action Could Have Been Brought in the Northern District of Georgia.**

In patent infringement cases, venue is proper in the judicial district "where the defendant resides" or "has a regular and established place of business."  28 U.S.C. §§ 1391(c), 1400(b).  For U.S. corporations, the concept of "residing" for venue purposes is analyzed according to the test for personal jurisdiction in that venue.  28 U.S.C. §§ 1391(d).  Because Itron sells its products throughout the United States (including in the Northern District of Georgia), has customers and partners in the Northern District of Georgia and regularly conducts business there, venue would be proper in the Northern District of Georgia.  (*See id.* ¶¶ 9-10).  Accordingly, this action could have been brought in the Northern District of Georgia.

**B.     The Private Interest Factors Favor Transfer.**

**1.     Relative Ease of Access to Sources of Proof**

The "relative ease of access to sources of proof," factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872 (E.D. Tex. 2013). "[A]lmost invariably, this factor will turn upon which party will most probably have the greater volume of documents relevant to the litigation and their presumed physical location in relation to the transferee and transferor venues." *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

This factor weighs heavily in favor of transfer because a substantial number of relevant party and non-party witnesses reside in or near the Northern District of Georgia, including substantial sources of proof, while very few, if any, significant witnesses or sources of proof are in this District. Most notably, the research, design, development and manufacturing of the accused OpenWay system occurs primarily in Oconee, South Carolina, at Itron's 325,000 square foot facility with more than 600 employees. (*See* Pontin Decl. ¶¶ 4-5). The facility is shown in the photograph below. (*See* Pontin Decl. ¶ 4).



Similarly, relevant documents and data pertaining to Itron's research, design, development, marketing, and sales of the accused OpenWay system are located in Oconee, which is in close proximity to the Northern District of Georgia – about 65 miles from the Greenville division and about 120 miles from Atlanta.  (*See id.* ¶¶ 6, 8).  These witnesses and documents will likely be material to the issues of non-infringement and damages.

In addition, numerous relevant non-party witnesses, including the named inventors, the former patent owner, and the brokerage firm that sold the patents-in-suit, all reside in the Northern District of Georgia.  (*See* Guaragna Decl. ¶¶ 7-9, Exs. F, G, H).  These non-parties are expected to have relevant documents and information pertaining to the conception, reduction to practice, ownership, prosecution, valuation, and sale of the patents-in-suit, and prior art pertaining to the patents-in-suit.

Conversely, the Eastern District of Texas is unlikely to have a significant amount of relevant documents.  GroupChatter has only been in existence since September 2014, and only recently acquired the patents-in-suit in July 2015.  (*See* Guaragna Decl. ¶¶ 2, 13, Exs. A, L).  To the extent GroupChatter transferred documents to this district in anticipation of litigation, those documents should be disregarded in the transfer analysis, in any event.  *See In re Hoffman-La Roche*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).  Accordingly, this factor weighs heavily in favor of transfer.  *See* 2/11/16 Memorandum Opinion and Order transferring defendants Landis+Gyr to the Northern District of Georgia *finding that this factor weighs strongly in favor of transfer*. (Case No. 6:15-cv-00863, Dkt. 52) ("L+G Transfer Order").

### 2. Availability of Compulsory Process to Secure Attendance of Witnesses

The next private interest factor is the availability of compulsory process to secure attendance of witnesses.  "This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue," and "will weigh the heaviest in favor of

transfer when the transferee venue is said to have 'absolute subpoena power.'" *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). "Absolute subpoena power" is subpoena power for both depositions and trial. *See id.*

Here, significant non-party witnesses are located within the absolute subpoena power of the Northern District of Georgia. For example, the two named inventors of the patents-in-suit, James M. Dabbs, III and Brian Claise, still appear to work for the previous patent owner, Critical Response Systems, as the President and Vice President, respectively. (*See* Guaragna Decl. ¶ 7, Ex. F). Critical Response Systems is located in the Northern District of Georgia (Norcross, Georgia). (*See* Guaragna Decl. ¶ 8, Ex. G). These non-parties likely have firsthand knowledge about, and documents pertaining to, the conception, reduction to practice, and ownership of the patented technologies, the prosecution, valuation and sale of the patents-in-suit, and prior art to the patents-in-suit. IPinvestments Group, the company that brokered the sale of the patents-in-suit, is also located in the Northern District of Georgia (Norcross, Georgia). (*See* Guaragna Decl. ¶ 9, Ex. H). IPinvestments Group likely has firsthand knowledge and documents relating to the sale of, and any valuation performed on, the patents-in-suit.

Conversely, Itron has not identified any non-party witnesses with relevant and material information who are located in the Eastern District of Texas or within 100 miles of Tyler, Texas. Accordingly, this factor weighs heavily in favor of transfer: "The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." *In re Genentech,* 566 F.3d at 1345. Therefore, this factor weighs strongly in favor of transfer. *See* L+G Transfer Order ***finding that this factor weighs in favor of transfer***.

### 3. Cost of Attendance for Willing Witnesses

The cost of attendance for willing witnesses, or the convenience of the parties and party witnesses, is the third private interest factor for the Court to consider. In analyzing cost of

attendance, courts consider convenience of both party and non-party witnesses.  *See Adaptix*, 937 F. Supp. 2d at 875.  "Although the court must consider the convenience of both party and non-party witnesses, 'it is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight in a transfer of venue analysis.'"  *Wireless Recognition Techs. LLC v. A9.com*, No. 2:10-cv-364, 2012 WL 506669, at *5 (E.D. Tex. Feb. 15, 2012).  Because inconvenience for witnesses increases with distance from home, the Fifth Circuit has adopted a 100-mile rule.  "[W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404 is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Adaptix,* 937 F. Supp. 2d at 875.

     A substantial number of party witnesses and non-party witnesses live in or near the Northern District of Georgia, while few (if any) relevant witnesses live in this District, and therefore, this factor weighs heavily in favor of transfer.  In addition, key Itron employees involved in the design, development, and manufacturing of the accused OpenWay system are located very close to the Northern District of Georgia in Oconee, South Carolina.  (*See* Pontin Decl. ¶¶ 4-5).  These witnesses and their Oconee-based teams collectively have knowledge about the research, design, development, marketing and manufacturing of the OpenWay products.  (*Id*.)  Moreover, the named inventors of the patents-in-suit, the prior patent owner, and the brokerage firm involved in the sale of the patents-in-suit also reside in the Northern District of Georgia.  (*See* Guaragna Decl. ¶¶ 7-9, Exs. F, G, H).  All of these witnesses would incur significant inconvenience and expense having to travel roughly 700-800 miles to Tyler, Texas, if the case is maintained here.  (*See* Guaragna Decl. ¶ 14, Ex. M, Pontin Decl. ¶ 6).

These witnesses would incur substantially less inconvenience and expense if the case is transferred to the Northern District of Georgia.  *(Id.)*

In contrast, GroupChatter has identified only one witness who may reside in the Eastern District of Texas (one of the managing members of Monument Patent Holdings).  (*See* Guaragna Decl. ¶ 4, Ex. C).  Since there are significantly more witnesses in or near the Northern District Georgia than in the Eastern District of Texas who will be otherwise unnecessarily inconvenienced by having to travel if the case is maintained in this District, this factor weighs heavily in favor of transfer.  *See* L+G Transfer Order *finding that this factor weighs in favor of transfer*.

### 4. Any Other Practical Problems

With respect to the fourth private interest factor, "[p]ractical problems include those that are rationally based on judicial economy," *Zenith Elecs. LLC v. Sony Corp.*, No. 11-cv-02439, 2011 U.S. Dist. LEXIS 102242, at *27 (E.D. Tex. Apr. 25, 2011).  Itron is unaware of any judicial economy concerns that weigh against transfer.  This case is in its infancy.  GroupChatter filed its Complaint on October 6, 2015, and Itron filed its response on December 14, 2015.  (*See* Dkt. Nos. 1, 12).  A scheduling conference with Itron has not yet occurred and no discovery or substantive activity has taken place.  Accordingly, this factor is neutral.  *See* L+G Transfer Order finding that this factor is neutral.

### C.   The Public Interest Factors Collectively Favor Transfer.

### 1. Administrative Difficulties Flowing From Court Congestion

This factor is the "most speculative," however, and where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district should not alone outweigh all of the other factors."  *Voxpath v. LG Elecs. U.S.A., Inc.,* No. 2:210-cv-160, 2012 WL 194370, at *7 (E.D. Tex. Jan. 23, 2012) (quoting *Genentech*, 566 F.3d at 1347).   The

median time to trial in the Northern District of Georgia is currently only slightly longer than in the Eastern District of Texas, and therefore, this factor is neutral. (*See* Guaragna Decl. ¶ 15, Ex. N). *See* L+G Transfer Order *finding that this factor is neutral*.

### 2. The Local Interest in Having Localized Interests Decided at Home

In analyzing this factor, the Court considers the local interest in the litigation. *See Wireless Recognition Techs.*, 2012 WL 506669, at *6. While the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue, "if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Hoffman-La Roche*, 587 F.3d at 1338. Here, the Northern District of Georgia has a much stronger local interest in resolving this case than the Eastern District of Texas because the Georgia area has significant connections to events giving rise to the suit.

**First**, numerous non-party witnesses, including the named inventors and former owner of the patents-in-suit, and the brokerage firm that sold the patents-in-suit, are located in the Northern District of Georgia. (*See* Guaragna Decl. ¶¶ 7-9, Exs. F, G, H). Accordingly, significant activities pertaining to the conception, reduction to practice, prosecution, and sale of the patents-in-suit, and the design, development, and manufacturing of accused products have strong ties to the Northern District of Georgia. Thus, the Northern District of Georgia has a significant interest in this case. "Communities have the right to adjudicate disputes involving 'several individuals' who have had their 'work and reputation' called into question 'and who presumably conduct business in that community.'" *Voxpath,* 2012 WL 194370, at *6 (quoting *Hoffman-La Roche*, 587 F.3d at 1336). All of these witnesses have work and reputations that may be questioned during litigation and at trial.

**Second**, the research, design, and development of the accused OpenWay system occurs near the Northern District of Georgia in Oconee, South Carolina. A substantial number of Itron employees engaged in these activities, including employees who manage these activities, are located in the community; and documents pertaining to the research, design, development, and manufacturing of the OpenWay system are located near there. (*See* Pontin Decl. ¶¶ 4-5). See *Hoffman-LaRoche*, 587 F.3d at 1336 ("[L]ocal interest in the case remains strong because the cause of action calls into question the work and reputation of several individuals *residing in or near that district* and who presumably conduct business in that community." (emphasis added).

**Third**, The Eastern District of Texas, in contrast, has limited ties to this case. Beyond the recent formation of GroupChatter, the only other apparent connection that this case has to the Eastern District of Texas is the nationwide sale of the accused OpenWay system. But such limited connections are afforded little to no weight in the analysis. *See Adaptix*, 937 F. Supp. 2d at 878 ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district."); *TS Tech*, 551 F.3d at 1321 ("[T]he vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue."); *Wireless Recognition Techs.*, 2012 WL 506669, at *6 ("Interests that 'could apply virtually to any judicial district or division in the United States,' such as nationwide sale of infringing products, are disregarded in favor of particularized local interests." (quoting *Volkswagen II*, 545 F.3d at 318)). Accordingly, this factor weighs in favor of transfer. *See* L+G Transfer Order *finding that this factor weighs in favor of transfer*.

### 3. Familiarity with the Law that will Govern Case

This factor is neutral. Patent claims are governed by federal law, and both districts are equally capable of applying the law in this case. *See Wireless Techs. Recognition*, 2012 WL 506669, at *6.  GroupChatter did not contest that this factor was neutral in responding to defendant Landis & Gyr's Motion to Transfer to the Northern District of Georgia.  *See* L+G Transfer Order finding the remaining public interest factors are neutral.

### 4. Avoidance of Conflicts of Laws

The fourth public interest factor, which relates to conflicts of laws, is neutral, since federal law governs this case, and no other potential conflict of law issues are anticipated. *See id.* GroupChatter did not contest that this factor was neutral in responding to defendant Landis & Gyr's Motion to Transfer to the Northern District of Georgia.  *See* L+G Transfer Order finding the remaining public interest factors are neutral.

## IV. CONCLUSION

The private and public interest factors collectively weigh in favor of this case being transferred to the Northern District of Georgia because it is the clearly more convenient forum. Thus, Itron respectfully moves for transfer of this case to the Northern District of Georgia for the convenience of the parties and witnesses and to promote the interest of justice.  *See Nintendo*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer.").

                                                Respectfully submitted,

Dated:  February 17, 2016        By: */s/ John M. Guaragna*
                                              JOHN M. GUARAGNA
                                              Texas Bar No. 24043308
                                              **DLA PIPER LLP (US)**
                                              401 Congress Avenue, Suite 2500
                                              Austin, TX  78701-3799
                                              Tel: 512.457.7000
                                              Fax: 512.457.7001
                                              john.guaragna@dlapiper.com

                                              ATTORNEY FOR DEFENDANT
                                              ITRON, INC.

## CERTIFICATE OF CONFERENCE

The undersigned certifies that on February 16, 2016, counsel for the parties met and conferred regarding the present motion in compliance with Local Rule CV-7(h). Plaintiff did not consent to the relief requested, conclusively leaving the parties at an impasse, and an open issue for the Court to resolve.

*/s/ John M. Guaragna*
John M. Guaragna

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 17, 2016, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3).  Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ John M. Guaragna*
John M. Guaragna